# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK FOSBENNER<br>1516 E. Palmer Street<br>Philadelphia, PA 19125<br><br>     Plaintiff,<br><br>  v.<br><br>SUGARHOUSE HSP GAMING<br>PROP, GP, LLC<br>d/b/a RIVERS CASINO PHILADELPHIA<br>f/k/a SUGARHOUSE CASINO;<br>900N. Michigan Ave. Suite 1900<br>Chicago IL 60611<br><br> and,<br><br>SUGARHOUSE HSP GAMING, L.P.<br>d/b/a RIVERS CASINO PHILADELPHIA<br>f/k/a SUGARHOUSE CASINO<br>1001 N. Delaware Avenue<br>Philadelphia, PA 19125<br><br>     Defendants. | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Mark Fosbenner ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Sugarhouse HSP Gaming Prop, GP, LLC d/b/a Rivers Casino Philadelphia f/ka Sugarhouse Casino; and Sugarhouse HSP Gaming, L.P., d/b/a Rivers Casino Philadelphia f/k/a Sugarhouse Casino, ("Defendants"), alleges as follows:

1. Plaintiff brings this action to redress violations by the Defendants of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*., the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq*., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §

2601, *et seq*., and asserts Defendants ultimately demoted him in retaliation for his attempts to exercise those rights in violation of the same. As a result, Plaintiff has suffered damages set forth herein.

## PARTIES

2. Plaintiff Mark Fosbenner (hereinafter, "Plaintiff") is a citizen of the United States and Pennsylvania, and currently maintains a residence at 1516 E. Palmer Street, Philadelphia, PA 19125.

3. Upon information and belief, Defendant Sugarhouse HSP Gaming Prop, GP, LLC. d/b/a Rivers Casino Philadelphia f/k/a Sugarhouse Casino is a for-profit limited liability company registered to do business in the Commonwealth of Pennsylvania and maintains a place of business located at 11701 Roosevelt Blvd, Philadelphia, PA 19154.

4. Upon information and belief, Defendant Sugarhouse HSP Gaming, L.P. d/b/a Rivers Casino Philadelphia f/k/a Sugarhouse Casino is a for-profit corporation registered to do business in the Commonwealth of Pennsylvania and maintains a place of business located at 11701 Roosevelt Blvd, Philadelphia, PA 19154.

## JURISDICTION AND VENUE

5. On or about April 16, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), and 43 P.S. §959 (a). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2020-04310. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

6. By Correspondence dated July 26, 2021, Plaintiff received a Notice of Right to Sue from the EEOC regarding his charge, advising Plaintiff that he had ninety (90) days to file suit against Defendants.

7. Plaintiff filed the instant action within the statutory time frame applicable to his claims.

8. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintain this action.

9. This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and the Family and Medical leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as his federal claims.

**FACTUAL BACKGROUND**

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. In or around August 30, 2010, Defendants hired Plaintiff in the position of Cage Cashier.

14. At all times material hereto, Plaintiff received positive performance reviews, occasional praise, and no significant discipline. In fact, on or about March 2012, Plaintiff was promoted to the position of Cage Shift Manager.

15. By way of background, Plaintiff suffers from hip complications that require a hip replacement surgery. This surgery has currently been postponed due to Plaintiff's age and weight.

16. Plaintiff also suffers from nerve and disc damage in his lower back.

17. The aforementioned medical conditions constitute disabilities within the meaning of the ADA and PHRA because they substantially limit major life activities such as working, walking, standing, sitting, sleeping, and general comfort.

18. On or about August 30, 2019, Plaintiff was approved for and began FMLA medical leave.

19. By way of background, Plaintiff submitted paperwork to Defendants' Human Resources Representative, Hillary Davie (hereinafter, "Mr. Davie") and UNUM Disability Insurance ("UNUM") for the purpose of qualifying for FMLA leave.

20. Plaintiff's request for a medical leave of absence in connection to his disability constitutes a request for a reasonable accommodation pursuant to the ADA and PHRA.

21. On or about September 11, 2019, Plaintiff was released back to work without restrictions by his primary care physician, Dr. Christopher Dick APN-C ("Dr. Dick").

22. Despite being released back to work without restrictions, Mr. Davie advised that Plaintiff was unable to return to work until about September 29, 2019, because Mr. Davie was working with Defendants' doctor to determine accommodations for Plaintiff.

23. Mr. Davie further advised Plaintiff that on or about September 10, 2019, he filed an ADA accommodation request on Plaintiff's behalf, despite Plaintiff's September 11, 2019 doctor's note stating that Plaintiff did not require an accommodation.

24. On or about October 17, 2019, Plaintiff received an epidural to treat his lower back by Dr. Youssef Josephson, DO. ("Dr. Josephson"), at Jefferson Township Hospital in Washington Township, NJ.

25. In or around late October or early November, Plaintiff had a follow up appointment with Dr. Dick at Jefferson Health New Jersey.

26. Dr. Dick sent Defendants Plaintiff's updated work restrictions of (1) not lifting in excess of 25lbs, (2) limited walking, (3) sitting for as long as fifteen (15) minutes when required, and (4) intermittent absences for doctor's appointment and/or exacerbations to Plaintiff's disabilities.

27. Dr. Dick recommended Plaintiff follow these restrictions for three (3) to six (6) months before being released back to work without restrictions.

28. On November 13, 2019, Defendants called Plaintiff into Defendants' Human Resources office. Richard Woodruff (Vice President of Human Resources) ("Mr. Woodruff"), Donna Gormley (Defendants' Human Resources Officer) ("Ms. Gormley"), and Mr. Davie were present during this meeting.

29. Mr. Davie provided Plaintiff a letter stating that Defendants were "unable to reasonably accommodate your restrictions in your current position," and that "Human Resources and your department reviewed all open positions and identified an alternative position for which you are qualified, within the Finance department that can reasonably accommodate your restrictions."

30. Plaintiff was instructed that he had 72 hours to make a decision on whether to accept this demotion to Auditor, or he would be required to resign.

31. Plaintiff was later told of another available alternative, applying for a non-management position.

32. After the aforementioned ultimatum, Plaintiff contacted Defendants' Human Resources department and requested for the deadline to accept Plaintiff's position transfer to be extended.

33. Defendants' Human Resources office denied Plaintiff's request.

34. On or about November 16, 2019, Plaintiff emailed Mr. Davie accepting the position as an Auditor.

35. Notably, as an Auditor, Plaintiff was switched from a salary to an hourly rate, earning substantially less income than his position as Cage Manager.

36. Additionally, in his role as Auditor, Plaintiff is no longer eligible to receive an Annual Merit Bonus.

37. Despite Defendants' letter stating that Plaintiff could no longer perform the necessary functions of his position, Defendants instructed Plaintiff to work in the position of Cage Shift Manager for six (6) additional shifts before transferring to the Auditor position.

38. Upon information and belief, Defendants rehired a substantially younger employee, who, upon information and belief, did not suffer from a disability, to replace Plaintiff in his previous position.

39. Notably, this was not the first time that Plaintiff was subjected to differential treatment on the basis of his disabilities.

40. By way of example, approximately one (1) year prior to his demotion, Plaintiff made a request to Defendants' Human Resources department while on FMLA leave for an alternate shift time slot, but Plaintiff's request was disregarded by Defendants.

41. It is believed and therefore averred that Defendants demoted Plaintiff on the basis of his actual/perceived disabilities, his past record of impairment, because Defendants regarded Plaintiff as being disabled, and in retaliation for Plaintiff's request for a reasonable accommodation in connection thereto, in violation of the ADA/PHRA.

42. It is further believed and therefore averred that Defendants willfully violated the provisions of the FMLA by demoting Plaintiff in retaliation for exercising his rights under same, in violation of the FMLA.

43. As a result of Defendants' deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damage, including, but not limited to, loss of employment, promotions, benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation and damage to reputation.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION AND RETALIATION

44. Paragraphs 1 through 43 are hereby incorporated by reference as though the same were fully set forth at length herein.

45. At all times relevant hereto, Plaintiff was an employee of Defendants within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

46. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

47. Plaintiff's hip and back injuries constitute disabilities within the meaning of the ADA in that they substantially impair his ability to engage in major life activities, such as working, walking, standing, sitting, sleeping, and general comfort.

48. Despite his disabilities, Plaintiff would have been able to perform the essential functions of his job with or without a reasonable accommodation, including, but not limited to, a medical leave of absence.

49. By reasons of the foregoing, Defendants, through their agents, officers, servants, and/or employees, have violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff in his role as Cage Shift Manager, and by demoting Plaintiff on the basis of his actual/perceived disability, past record of impairment, and in retaliation for Plaintiff's requests for reasonable accommodations in connection thereto.

50. As a result of Defendants' deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses, and compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive damages in an amount to be determined at trial, but sufficient to punish Defendants for their intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## DISCRIMINATION AND RETALIATION

51. Paragraphs 1 through 50 are hereby incorporated by reference as though the same were fully set forth at length herein.

52. Plaintiff is a qualified individual with a disability within the meaning of the Pennsylvania Huan Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, due to his hip and back injuries which substantially limit Plaintiff's ability to perform major life activities such as working, walking, standing, sitting, sleeping, and general comfort.

53. Plaintiff was/is able to perform the essential functions of his job with or without a reasonable accommodation.

54. It is believed and therefore averred that Defendants demoted Plaintiff on the basis of his actual and/or perceived disability, for his past record of impairment, and in retaliation for Plaintiff's requests for a reasonable accommodation in connections thereto.

55. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

56. The conduct described above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendants, Plaintiff respectfully requests that this Court enter judgment in him favor and against Defendants, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Compensatory damages in an amount to be determined at trial;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of caps on certain damages as set forth by applicable law.

### COUNT III
### THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2601, *et seq.*
### RETALIATION

57. Paragraphs 1 through 56 are hereby incorporated by reference as though the same were fully set forth at length herein.

58. Defendants employed at least fifty (50) employees at its various office locations within the applicable seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more calendar days in the current or preceding year.

59. Plaintiff was an eligible employee under the FMLA and entitled to intermittent medical leave for his serious health conditions.

60. Defendants willfully violated the FMLA by demoting Plaintiff from his position as Cage Shift Manager in retaliation for his request and use of intermittent FMLA leave.

61. The aforementioned actions of Defendants constitute retaliation under the FMLA.

62. As a result of Defendants' actions, Plaintiff has suffered significant damages.

63. Plaintiff has, because of Defendants' wrongful termination of Plaintiff's employment, suffered loss of employment, promotion benefits, earnings and earnings potential, other significant benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Liquidated damages;

C. Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

                                      Respectfully submitted,

                                      **MURPHY LAW GROUP, LLC**

                            By: */s/ Brendan Mehler*
                                    Brendan Mehler, Esq.
                                    Michael Murphy, Esq.
                                    Eight Penn Center, Suite 2000
                                    1628 John F. Kennedy Blvd.
                                    Philadelphia, PA 19103
                                    TEL: 267-273-1054
                                    FAX: 215-525-0210
                                    bmehler@phillyemploymentlawyer.com
                                    murphy@phillyemploymentlawyer.com
                                    *Attorney for Plaintiff*

October 22, 2021

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and his claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.